UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Case No.

MONIQUE WILLIAMS,

                      Plaintiff,

                                                                                                                **COMPLAINT**

    -against-

THE CITY OF NEW YORK and                                       **PLAINTIFF DEMANDS**
NYC HEALTH AND HOSPITALS CORPORATION,         **A TRIAL BY JURY**

                      Defendants.
------------------------------------------------------------------------X

Plaintiff MONIQUE WILLIAMS ("Plaintiff"), by and through her attorneys, Nisar Law Group, P.C., hereby complains of Defendants THE CITY OF NEW YORK and NYC HEALTH AND HOSPITALS CORPORATION, upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action charging that Defendants, individually and together, violated the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. § 12101, *et seq.* ("ADA"), the <u>New York State Human Rights Law</u>, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and the <u>New York City Human Rights Law</u>, New York City Administrative Code § 8-107, *et seq.* ("NYCHRL") and seeks damages to redress the injuries she has suffered as a result of being discriminated against and having her employment terminated on the basis of her disability and/or perceived disability (Anemia) as well as refusing to provide a reasonable accommodation to which she was legally entitled.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5. On April 28, 2022, Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. On May 2, 2022, Plaintiff served Notices of Claim upon each defendant, respectively.

7. By letter dated May 16, 2022, Plaintiff—through legal counsel—received an acknowledgment of receipt of the Notices of Claim.

8. On May 1, 2024, the EEOC issued a Letter of Determination finding that there was "reason to believe a violation [of the ADA] has occurred," stating, in pertinent part:

> Evidence obtained does establish a violation under the ADA. Specifically, that Charging Party provided the medical documentation to prove the need for the reasonable accommodation, yet the Respondent failed to accommodate the Charging Party, which resulted in the termination of her employment.

9. Plaintiff received a Notice of Right to Sue from the EEOC, issued May 17, 2024, with respect to the herein charges of discrimination.

10. This action is being commenced within 90 days of receipt of said Notice of Right to Sue.

## PARTIES

11. At all times relevant, Plaintiff was and is a resident of the State of New York and New York County.

12. At all times relevant, Defendant THE CITY OF NEW YORK ("City of New York") was and is a municipal entity duly organized and existing under, and by virtue of, the laws of the State of New York.

13. At all times relevant, Defendant NYC HEALTH AND HOSPITALS CORPORATION ("NYC HHC") was and is a is a public benefit corporation duly operating under the laws of the State of New York, with its headquarters located at 125 Worth Street, New York, NY 10013.

14. Defendants CITY OF NEW YORK and NYC HHC shall be herein referred to together as "Defendants."

## MATERIAL FACTS

15. At all times relevant, Plaintiff suffered from anemia (and still does), including throughout the entirety of her employment with Defendants. According to the Mayo Clinic:

    Anemia is a problem of not having enough healthy red blood cells or hemoglobin to carry oxygen to the body's tissues. Hemoglobin is a protein found in red cells that carries oxygen from the lungs to all other organs in the body. Having anemia can cause tiredness, weakness and shortness of breath. There are many forms of anemia. Each has its own cause. Anemia can be short term or long term. It can range from mild to severe.

16. On or about November 18, 2018, Plaintiff began working for Defendants as an "Assistant Director of Cost Accounting," earning approximately $100,000 per year.

17. Throughout Plaintiff's employment, she was an overall good employee who routinely received compliments for her work performance.

18. Around mid-March 2020, when COVID-19 took grip on America, Plaintiff (as well as other employees of Defendants) began working remotely in a full-time capacity.

19. In or around the Fall of 2021, Defendant City of New York (as well as Defendant NYC HHC) rolled out a mandatory COVID-19 vaccine mandate for all New York City employees (Plaintiff included).

20. On November 16, 2021, Plaintiff requested a reasonable accommodation for her disability with respect to Defendants' COVID-19 vaccination mandate.

21. Specifically, on November 16, 2021, Plaintiff requested a reasonable accommodation for her blood disorder and provided Defendants with a letter from her physician, Dr. Bartosz Walczyszyn, MD, stating:

> [Plaintiff] has undergone a Hematology/Oncology evaluation with me for a symptomatic blood disorder. … [A]ny reaction to the vaccine may be additive to the symptoms she is already experiencing from her underlying hematologic condition. Given proof of persistent immunity based on antibody titers, I recommend holding off on anti-COVID inoculation at this time until her blood issue is dealt with as this will help minimize any potential health complications.

22. Plaintiff never expected that this would be an issue since it was only a temporary accommodation and she was fully able to continue performing her job remotely as she had done successfully since March 2020 while she waited to be cleared to receive the vaccine.

23. However, on or about November 18, 2021, Defendants denied Plaintiff's request for an accommodation.

24. On or about November 19, 2021, Jasmin Wu (Defendant HHC's Assistant Director, Central Office HR Operations) sent Plaintiff an email suspending Plaintiff's employment without pay "until your compliance with the New York State COVID-19 Vaccination Mandate."

25. Plaintiff did not understand why Defendants failed to even discuss her blood condition with her before denying her accommodation request and forcing her to go on unpaid leave.

26. As such, later that same day—November 19, 2021—Plaintiff sent an email to Lisa Stager (Defendant NYC HHC's AVP for Cost Accounting and Reporting) and Michael Katzab (Defendant NYC HHC's Director of Human Resources) ("Katzab") in which she wrote:

> [H]ow would I appeal this Medical Review Committee? The doctor who determined my ineligibility for the vaccine has been my healthcare provider for over two years and can thoroughly speak to my condition. Is there a current appeals process for HHC where the medical team speaks to my medical doctor as part of validating my request for medical exemption? I have an upcoming appointment with my hematologist again next week; would there be something additional I can obtain (medical records, labs, etc.) to aid in approval?

27. On or about November 23, 2021, rather than address Plaintiff's concerns as well as the fact that Plaintiff was seeing her hematologist the following week, Yvette Villanueva (Defendant NYC HHC's Senior Vice President, Human Resources) ("Villanueva") instead sent Plaintiff an email advising:

> [O]ur records indicate that you have not complied with the NYS Mandate COVID-19 Vaccination, Second Dose. If you do not become fully vaccinated, you will be separated from NYC Health +Hospitals on Monday, November 29, 2021.

28. This email made it absolutely clear to Plaintiff that Defendants had no intention on engaging in any interactive process to try to understand her hematologist's medical opinion before suspending her and demanding that she receive two doses of the COVID-19 vaccine within a six-day period.

29. Accordingly, the following day—on November 24, 2021—Plaintiff responded to Villanueva and stated:

> I technically would not be able to get a second shot since I haven't had the first yet. … Your medical review team stated my issue was not approved; however, your medical team never consulted my doctor on my medical issue. How does a medical team who does not know a patient's medical history determine the scale in which a patient can or cannot vaccinate? For reference, I would like to know why I am being forced to go against written medical advice to save my job. … I requested medical accommodations given the fact that I can do my job remotely without any impact or covid risk to any of HHC's employees and/or patients. I do not understand why I am unable to continue this accommodation until I can be cleared medically.

30. Later that same day, also on November 24, 2021, still refusing to engage in any

5

interactive process, Defendants' Office of EEO sent Plaintiff an email simply claiming that:

> Your medical condition does not support a contraindication to the COVID-19 vaccines as determined by current Centers for Disease Control and Prevention (CDC) guidance.

31. On November 27, 2021, Plaintiff emailed both Katzab and Villanueva in which she advised them once again that she was unable to receive both rounds of the vaccine by November 29, 2021 due to her disability and pleaded with them to discuss a temporary accommodation.

32. On November 29, 2021, again refusing to even converse with Plaintiff, Defendants' HR Department emailed Plaintiff and stated: "You must submit proof of your vaccination today." Plaintiff did not understand why Defendants were refusing to talk to her to at least try to understand her physician's concerns with her receiving the vaccine at that specific time.

33. As a result, also on November 29, 2021, Plaintiff sent a reply email which stated:

> You are telling me to vaccinate against the medical advice written by my physician and submitted to you by me. You are also stating that I must get the FIRST vaccine dose today (again against medical advice) and you have denied my reasonable accommodation request. I would like to make you aware again that I am not refusing vaccination and that am requesting reasonable accommodation until I am medically cleared to vaccinate (which obviously won't be the case forever). This is a temporary request until I can be cleared. I find it unfair and unjust that my situation has not been handled properly, therefore, I have submitted an appeal to NYC Vaccine appeals department for NYC workers. As mentioned previously, I have a follow up with my physician this Thursday for clearance. If that does not suffice with NYC HHC please advise if I am terminated effective today or remaining on unpaid leave until I submit vaccination card.

34. In response, on November 29, 2021, Defendants simply stated:

> [T]he medical review committee did not find that the supplied medical documentation supported an exemption ... No further extension is approved. … If

you do not become fully vaccinated, you will be separated from NYC Health + Hospitals on Monday, November 29, 2021.

35. Accordingly, Plaintiff immediately responded and stated, "I hope that you realize that it would be impossible for me to be fully vaccinated (having both shots) by today." Plaintiff never received any response to this email.

36. The following day, on November 30, 2021, Plaintiff was seen by her hematologist who cleared her to receive the COVID-19 vaccine and gave her a letter which stated:

> [Plaintiff] was seen in follow up on 11/30/21 to evaluate for COVID vaccine clearance. Based on my most recent evaluation her blood condition did stabilize after treatments in October of 2021. As stated in my previous letter we were awaiting improvement in [Plaintiff]'s Hematologic condition prior to her getting vaccinated. At this time I do clear her for COVID inoculation with Pfizer being the preferred vaccine. I also want to stress that my initial recommendation should not be grounds for her employment termination. She will be getting the vaccine between the dates of 11/29/21 and 12/4/21.

37. Unfortunately, the next day—December 1, 2021—rather than permit Plaintiff to temporarily work from home as an accommodation until she was fully vaccinated, which was clearly to be happening very soon, Villanueva emailed Plaintiff to officially terminate her employment due to being "non-compliant with the COVID-19 vaccination requirement."

38. Three days later, on December 4, 2021, Plaintiff received the first dose of the vaccine, and received the second dose on January 24, 2022. Thus, if Defendants had only engaged in the interactive process with Plaintiff and her doctor, Defendants would have determined that they could have easily accommodated Plaintiff's disability until January 24, 2022.

39. Defendants were apparently upset that they had to provide Plaintiff with an accommodation for her disability, and rather than permit her to continue working from

7

home in a temporary capacity as an accommodation, Defendants instead determined that it was easier to simply terminate her employment.

40. Defendants not only refused to provide Plaintiff with a reasonable accommodation for her blood disorder but also failed to engage in the interactive process, ultimately terminating her employment unlawfully due to her disability.

41. Before terminating her employment, Defendants failed to address Plaintiff's blood disorder and/or discuss her disability with either Plaintiff or her doctor.

42. But for the fact that Plaintiff was disabled and needed an accommodation for her disability, Defendants would not have terminated her employment.

43. Plaintiff's condition was and is an impairment that substantially limits one or more of her major life activities within the meaning of § 12102(1)(A) of the ADA.

44. Plaintiff's condition was and is a "physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or … a record of such an impairment or … a condition regarded by others as such an impairment …" as contemplated by N.Y. Exec. Law § 292(21).

45. Plaintiff's condition was and is a "physical, medical, mental or psychological impairment, or a history or record of such impairment" as contemplated by NYC Administrative Code § 8-102.

46. Plaintiff is a qualified individual who could perform the essential functions of her employment with a reasonable accommodation as contemplated under the ADA, NYSHRL and NYCHRL.

47. As a result of Defendants' discrimination, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

48. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

49. Plaintiff seeks damages for lost wages, emotional distress, punitive damages, and attorneys' fees.

50. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

51. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

52. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff seeks punitive damages.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

53. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

54. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at Section 12101.

55. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112 "Discrimination" states: "(a) General rule. - No covered entity shall

9

discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

56. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of a disability and/or perceived disability and failed to provide her reasonable accommodations to which she was entitled, causing her damages.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

57. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58. New York State Executive Law § 296 provides that, "(1) It shall be an unlawful discriminatory practice: (a) For an employer … because of an individual's … disability … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

59. Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her disability and/ or perceived disability and failed to provide her reasonable accommodations to which she was entitled, causing her damages.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

60. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived … disability …, to refuse to hire or employ or to bar or

10

to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

62. Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her disability and/ or perceived disability and failed to provide her reasonable accommodations to which she was entitled, causing her damages.

## JURY DEMAND

63. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, the New York State Human Rights Law, New York State Executive Law § 296, *et seq.,* and the New York City Human Rights Law, New York City Administrative Law § 8-107, *et seq.*, by discriminating against Plaintiff on the basis of a disability and/or perceived disability;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful employment practices and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
       July 19, 2024

                                 **NISAR LAW GROUP, P.C.**

By: _____
      Casey Wolnowski, Esq.
      *Attorneys for Plaintiff*
      One Grand Central Place
      60 East 42nd Street, Suite 4600
      New York, NY 10165
      Ph: (646) 889-1007
      Fax: (516) 604-0157
      Email: cwolnowski@nisarlaw.com