USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/09/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                     :

MONIQUE WILLIAMS,                    :
                                       :

                      Plaintiff,         :
                                       :                  24-cv-5467 (LJL)

         -v-                          :
                                       :           OPINION AND ORDER

NYC HEALTH AND HOSPITALS CORPORATION,   :

                   Defendant.        :
                                       :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Monique Williams ("Plaintiff," or "Williams") brings this suit against her former employer NYC Health and Hospital Corporation ("Defendant," or "H+H") for its failure to accommodate her disability when it terminated her employment in late 2021.  Defendant moves to dismiss Plaintiff's complaint in full for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the motion to dismiss is denied.

## BACKGROUND

The Court accepts the well-pleaded facts of the Second Amended Complaint as true for purposes of this motion.

Williams began working at H+H on or about November 18, 2018, as an "Assistant Director of Cost Accounting."  Dkt. No. 41 (the "SAC") ¶ 31.  In that job, her primary responsibilities were reviewing financial numbers and providing recommendations on how to best manage department budgets.  *Id.* ¶ 32.  She worked out of an office at 50 Water Street in New York City.  *Id.* ¶ 31.  At all relevant times, Plaintiff suffered from anemia, which is "a problem of not having enough healthy red blood cells or hemoglobin to carry oxygen to the body's tissues."  *Id.* ¶ 13.  Due to her condition, Plaintiff required regular iron infusions and

suffered from heart palpitations, jaundice, unsteady gait, tiredness, dizziness, headaches, inability to concentrate, challenges in breathing, and chest pain. *Id.* ¶¶ 22–23. The symptoms ranged from mild to severe and resulted in her often having challenges making it through the workday; "[a]s the day wore on, she became more tired to the point of exhaustion," such that she would need to "take breaks." *Id.* ¶¶ 24–25.

When the COVID-19 pandemic became widespread in March of 2020, Plaintiff and other employees at H+H began working remotely full-time. *Id.* ¶ 36. On August 26, 2021, the New York Department of Health enacted an emergency rule requiring healthcare facilities to ensure that certain personnel were vaccinated against COVID-19 on or before September 27, 2021. *See* 10 N.Y.C.R.R. § 2.61 (repealed 2023). The vaccine requirement did not apply to all employees, but only to those covered by the Rule's definition of "personnel": those employees, staff members, and volunteers "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." *Id.* § 2.61(a)(2). The Rule contained an exception as well. "If any licensed physician . . . certifies that immunization with COVID-19 vaccine is detrimental to the health of a covered entity's personnel, based on pre-existing health condition, the requirement of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health." *Id.* § 2.61(d)(1).

Following passage of Section 2.61, H+H announced that all health staff would have to receive at least the first dose of an approved COVID-19 vaccine by September 27, 2021. SAC ¶ 37; *see New York State Vaccine Mandate for Health Care Workers: Frequently Asked Questions*, NYC Health + Hosps. (Sept. 24, 2021), https://ess.nychhc.org/uploads/vax-mandate-faq.pdf. Any request for an accommodation could be submitted to H+H's Office of Equal Employment

2

Opportunity ("EEO") for review and determination.  *Id.*  The EEO would only grant remote work accommodation requests if the relevant job duties could be performed remotely.  *Id.*

In early to mid-August 2021, Plaintiff contracted COVID-19.  SAC ¶ 38.  She visited the doctor and he instructed her that she should not get vaccinated for at least 90 days because she had just contracted the virus.  *Id.* ¶ 39.  Plaintiff was also told during this period by her supervisor at H+H, Lisa Stager, that she would not need to get vaccinated because she was not a patient-facing employee.  *Id.* ¶ 41.  A hematologist that Plaintiff visited on November 16, 2021, Dr. Walczyszyn, recommended she not get the vaccine at that moment because of her anemia.  *Id.* ¶ 45.  He wrote a note to her employer to that effect, which contained his "recommend[ation]" that she "hold[] off on anti-COVID inoculation at this time," as "any reaction to the vaccine may be additive to the symptoms she is already experiencing from her underlying hematologic condition."  *Id.* ¶¶ 43, 45.  That same day, she requested an accommodation from H+H with respect to the vaccination mandate, attaching the note from her hematologist to her request.  *Id.* ¶¶ 44–45.  Her request for an accommodation was denied two days later on November 18, 2021.  *Id.* ¶ 48.

The day after her request for an accommodation was denied, Plaintiff was contacted by Jasmin Wu, a human resources employee at H+H, who suspended Plaintiff's employment without pay "until your compliance with the New York State COVID-19 Vaccination Mandate."  *Id.* ¶ 49.  Plaintiff then reached out to the human resources department of H+H requesting to appeal that determination.  *Id.* ¶ 51.  H+H employee Yvette Villanueva responded:

> Our records indicate that you have not complied with the NYS Mandate COVID-19 Vaccination, Second Dose.  If you do not become fully vaccinated, you will be separated from NYC Health + Hospitals on Monday, November 29, 2021.

*Id.* ¶ 52.  Plaintiff responded to that email stating that "I do not understand why I am unable to continue this accommodation until I can be cleared medically."  *Id.* ¶ 54.  H+H again responded,

3

explaining that "Your medical condition does not support a contraindication of the COVID-19 vaccines as determined by current Centers for Disease Control and Prevention (CDC) guidance." *Id.* ¶ 55.

On November 29, 2021, H+H emailed Plaintiff stating that she had to submit her proof of vaccination that day. *Id.* ¶ 57. Plaintiff responded, noting that she had not yet been vaccinated and was "not refusing vaccination" but rather "requesting reasonable accommodation until I am medically cleared to vaccinate (which obviously won't be the case forever)." *Id.* ¶ 58. Plaintiff had an appointment with her hematologist the next day, which she had previously disclosed to her employer. *Id.* ¶¶ 51, 62. H+H replied that because "the medical review committee did not find that the supplied medical documentation supported an exemption[,] . . . no further extension is approved," and that Plaintiff would be terminated later that day absent full vaccination. *Id.* ¶ 59.

The following day, November 30, 2021, Plaintiff's hematologist cleared her to receive the COVID-19 vaccine. *Id.* ¶ 62. He wrote another note and clarified that "[b]ased on my most recent evaluation her blood condition did stabilize after treatments in October of 2021." *Id.* He continued that as he stated in his previous letter, "we were awaiting improvements in Plaintiff's hematologic condition prior to her getting vaccinated," but that due to the improvements he could now "clear her." *Id.* Plaintiff emailed that letter to H+H, but on December 1, 2021, she was informed that her employment was terminated because she was "non-compliant with the COVID-19 vaccination requirement." *Id.* ¶ 67. Plaintiff received the first dose of the vaccine on December 4, 2021, and the second dose on January 24, 2022. *Id.* ¶ 68.

## PROCEDURAL HISTORY

Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunities Commission ("EEOC") on May 17, 2024. SAC ¶ 9. She initiated this suit by filing a complaint

on July 19, 2024.  Dkt. No. 1.  Plaintiff filed an amended complaint on October 29, 2024.  Dkt. No. 21.  H+H moved to dismiss the amended complaint on December 27, Dkt. No. 25, which this Court granted without prejudice on May 7, 2025, Dkt. No. 40; *see Williams v. NYC Health & Hosps. Corp.*, 2025 WL 1334667 (S.D.N.Y. May 7, 2025).  Plaintiff submitted a Second Amended Complaint on June 4, 2025.  Dkt. No. 41.  Defendant again moved to dismiss the SAC on July 25, 2025.  Dkt. No. 45.  Plaintiff submitted a memorandum of law in opposition on August 15, Dkt. No. 52, to which Defendant replied on September 19, Dkt. No. 54.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the

pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

## DISCUSSION

Plaintiff has sued for employment discrimination under the ADA, the New York State Human Rights Law, N.Y. Exec. Law § 296 (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1) (the "NYCHRL") based on her allegations that she was subjected to unlawful discrimination when H+H refused to provide her a reasonable accommodation and then terminated her employment. SAC ¶¶ 86–95. The ADA states that "[n]o entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees . . . and the privileges of employment." 42 U.S.C. § 12112(a). The statute then defines the term "discriminate against a qualified individual on the basis of disability" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A).

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009). Under the *McDonnell Douglas* burden-shifting framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

"To make a prima facie showing of a failure to provide reasonable accommodation under

6

the *McDonnell-Douglas* burden shifting framework applicable to employment discrimination claims, a plaintiff must prove that (1) she is a person with a disability under the meaning of the statute; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodations she could perform the essential functions of the job at issue (i.e., she is a 'qualified individual'); and (4) the employer refused to make such accommodations." *Williams v. Geiger*, 447 F. Supp. 3d 68, 79–80 (S.D.N.Y. 2020) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)).  The plaintiff bears the burden of demonstrating that a proposed accommodation exists and permits them to "perform the job's essential functions." *Schneider v. Wal-Mart Stores, Inc.*, 2019 WL 294309, at *6 (S.D.N.Y. Jan. 23, 2019) (citing *Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000)).  Once that burden is satisfied, it shifts to the defendant to demonstrate that the proposed accommodation is unreasonable.  *Id.*

The prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  "The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2014).  The Second Circuit has clarified that:

> [W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, *see Swierkiewicz*, 534 U.S. at 510 (noting that the prima facie case requirement is an evidentiary standard), it must at a minimum assert nonconclusory factual matter sufficient to "'nudge[ ] [its] claims' . . . 'across the line from conceivable to plausible'" to proceed, *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

*EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2015).  "After all, the pleading burden is calibrated to require only enough factual allegations 'to raise a reasonable

7

expectation that discovery will reveal evidence of 'the necessary elements of a claim.'" *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025) (quoting *Twombly*, 550 U.S. at 556); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) ("plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss," and "need only give plausible support to a minimal inference" of the claimed discrimination); *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023).

"Courts apply the same standard for failure to accommodate cases under the ADA . . . NYSHRL, and NYCHRL." *Frilando v. N.Y.C. Transit Auth.*, 463 F. Supp. 3d 501, 514 (S.D.N.Y. 2020) (quoting *Lawtone-Bowles v. City of New York*, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019)). "The NYSHRL and the NYCHRL are at least as protective as the ADA . . . and therefore a plaintiff who states a failure-to-accommodate claim under the ADA . . . necessarily states a failure-to-accommodate claim under the NYCHRL and NYCHRL." *Dixon v. City of New York*, 2025 WL 50140, at *12 (S.D.N.Y. Jan. 7, 2025).

## I.    Plaintiff Has Adequately Alleged a Qualifying Disability.

Defendant moves to dismiss the SAC on the basis that Plaintiff has not plausibly alleged that she had a covered disability. Under the ADA, an employee has a disability if she (1) has a physical or mental impairment that substantially limits a major activity; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12012(1). What qualifies as a major activity is defined in the Americans with Disabilities Act Amendments Act of 2008 (the "ADAAA"), Pub. L. No. 110-325 (codified at 42 U.S.C. § 12102(1)–(2)). *Williams*, 2025 WL 1334667, at *4. In its present form, the ADAAA divides "major life activities" into two categories and gives nonexclusive examples of each:

8

(A) In general . . .

[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B) Major bodily functions . . .

[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102(2)(A)–(B).  The statute also instructs that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  *Id.* § 12102(4); *see Bernheim v. N.Y.C. Dep't of Educ.*, 2021 WL 2619706, at *8 (S.D.N.Y. 2021); *Grullon v. Admin. for Children's Servs.*, 2021 WL 981848, at *12 (S.D.N.Y. Mar. 16, 2021).  Additionally, "in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities."  *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998).

Where invoking subsection 12102(2)(A), the Second Circuit has held that in order "[t]o determine whether a major life activity is substantially limited by an impairment," courts are to consider "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact."  *Ibela v. Allied Universal*, 2022 WL 1418886, at *1 (2d Cir. 2022) (summary order) (citing *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005)); *see Telemaque v. Marriot Int'l, Inc.*, 2016 WL 406384, at *6 (S.D.N.Y. Feb. 2, 2016); 29 C.F.R. § 1630.2(i), (j).  This Court has previously explained that "[t]here is a less well-developed body of law addressing the facts a plaintiff must plead when alleging an impairment that substantially limits a major bodily function under subsection

9

12102(2)(B)." *Williams*, 2025 WL 1334667, at *5. Courts have, under this provision, found that an HIV-positive plaintiff was disabled because the infection "substantially limit[ed] the major life activity of [the plaintiff's] immune system." *Alexiadis v. N.Y. Coll. of Health Pros.*, 891 F. Supp. 2d 418, 428–30 (E.D.N.Y. 2012). Other courts have held that a cancer diagnosis can be sufficient to constitute a disability under subsection 1012(2)(B). *See Alston v. Park Pleasant, Inc.*, 679 F. App'x 168, 172 (3d Cir. 2017); *Coker v. Enhanced Senior Living, Inc.*, 897 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012); *Fishbeck v. Lavaca County*, 2025 WL 662049, at *7 (S.D. Tex. 2025); *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1185 (E.D. Tex. 2011).

In her amended complaint, Plaintiff did not identify "any activities of daily living such as seeing, hearing, walking, sleeping, reading, or concentrating, that her anemia impacts in any way, let alone substantially limits." *Williams*, 2025 WL 1334667, at *6. Nor had she alleged information "concerning the severity, duration, or frequency of her alleged affliction." *Id.* In the SAC, Plaintiff has now added allegations to this effect; she has identified "activities of daily living . . . that her anemia impacts." *Id.* That is, she states that her anemia "caus[ed] significant limitations in her ability to perform certain major life activities" including "caring for herself, performing manual tasks while at work including seeing, walking, standing, lifting, bending, breathing, reading, concentrating, thinking, communicating, and working." SAC ¶ 24. She has "required regular iron infusions beginning in or around the end of 2011 . . . as well as throughout the time she was employed by Defendant." *Id.* ¶ 22. And her anemia has manifested in "heart palpitations, jaundice, unsteady gait, tiredness, dizziness, headaches, inability to concentrate, challenges in breathing as well as chest pain." *Id.* ¶ 23. Due to her condition, she would get more "tired" as the day progressed, *id.* ¶ 25, and the impact of the condition to her vision made it difficult for her to "see words on a computer screen, respond to emails and to review other work-

10

related documents," *id.* ¶ 27.  Plaintiff alleges that her symptoms "occurred regularly," and that "severe symptoms would manifest at least once per month."  *Id.* ¶ 28.  There would be times where she would need to leave work early "due to the symptoms of her anemia becoming so severe which resulted in her simply being unable to perform her job."  *Id.* ¶ 29.

In the SAC, Plaintiff explains that it was based on these persistent symptoms, in addition to a prior COVID-19 exposure, that her doctor recommended that she refrain from getting vaccinated "at this time," as "any reaction to the vaccine may be additive to the symptoms she is already experiencing from her underlying hematologic condition."  SAC ¶ 45.  That doctor continued that Plaintiff should hold off on getting the vaccine "until her blood issue is dealt with as this will help minimize any potential health complications."  *Id.*  In her communications with H+H, Plaintiff clarified that she was seeking accommodation only "until I am medically cleared to vaccinate (which obviously won't be the case forever).  This is a temporary request until I can be cleared."  *Id.* ¶ 58.  Plaintiff was eventually cleared by her doctor, *id.* ¶ 62, and received the vaccine on December 4, 2021, *id.* ¶ 68.

Plaintiff has now elaborated the specific major life activities that her anemia impacted and the way those activities were impacted.  *Contra Williams*, 2025 WL 1334667, at *6; *Anderson v. City of New York*, 712 F. Supp. 3d 412, 433 (S.D.N.Y. 2024) ("Plaintiff asserts a single, conclusory allegation that her abilities in several major life activities have been impaired, without any additional details.").  Although some of Plaintiff's allegations are somewhat general, the facts that she does allege are sufficient to make it plausible, not just possible, that her condition substantially impacted those identified major life activities.  In addition, her doctor's opinion that this condition was serious enough to impact her ability to receive the vaccine corroborates those symptoms.  In sum, "Plaintiff has adequately pleaded that her projected

11

reaction to the COVID-19 vaccine was more than sheer speculation and potentially serious enough to qualify as a disability under the ADA." *Carnett v. TIAA Ins. Co.*, 2026 WL 35348, at *5 (S.D.N.Y. Jan. 6, 2026); *see id.* (addressing similar allegations that a disability prevented plaintiff there from using her hands, walking, standing, and resulted in "generalized pain and discomfort in her joints").

Defendant argues that Plaintiff has nevertheless failed to state a claim that she has a disability under the ADA because her disability was temporary, as she did eventually receive the vaccine. First, that argument mischaracterizes Plaintiff's allegations and the documents she has incorporated into those pleadings by reference. She has not alleged that her anemia was a per se bar on receiving the vaccine, or that it was because her anemia entirely resolved that she was eventually able to receive the vaccine. Rather, she alleges that her condition was worse during certain periods and that her doctor recommended a delay in vaccination until her blood issue "is dealt with." SAC ¶ 45. When her condition improved, she received the vaccine. Drawing reasonable inferences in Plaintiff's favor, as the Court is required to do on a motion to dismiss, it is plausible that Plaintiff was recommended against the vaccine during a flare up and then received it once that had resolved. *See id.* ¶ 35 (the request accommodation was "a short respite from getting the COVID-19 vaccination while the interplay of her anemia and the vaccine itself were evaluated"). Thus, her condition was not temporary, but rather recurring; it ebbed and flowed—and it was because of this variability in severity that Plaintiff's doctor wanted to monitor her blood condition before recommending the vaccine.

Second, the Second Circuit has clarified that even a "temporary injury *can* constitute a qualifying disability, as long as the requirements of the ADA are met." *Hamilton v. Westchester County*, 3 F.4th 86, 94 (2d Cir. 2021). In *Hamilton*, although the defendant argued that the

12

plaintiff's injury was temporary, the Second Circuit stated that the "statute does not suggest there is any duration that is too short." *Id.* The court continued that the nature of the plaintiff's alleged injuries "permit the plausible inference that [his] injuries were ongoing and likely to last significantly longer than nineteen days." *Id.* at 95; *see also Mrani v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 2022 WL 889286, at *5 (S.D.N.Y. Mar. 24, 2022) ("*Hamilton* controls and accordingly even if plaintiff's impairment was in fact temporary, that fact alone does not preclude him from qualifying as an individual with a disability under the statute."); *Staley v. Smart*, 2024 WL 3835518, at *10 (S.D.N.Y. July 30, 2024) (collecting cases). That accords too with the fact that when the ADA was amended in 2008, it included within the definition of disability "an impairment that is episodic or in remission." 42 U.S.C. § 12102(4)(D). The amendment "was enacted to 'reject the reasoning of court decisions concluding that certain individuals with certain conditions—such as epilepsy or post-traumatic stress disorder—were not protected by the ADA because their conditions were episodic or intermittent.'" *Morea v. Fanning*, 2017 WL 3393843, at *7 (S.D.N.Y. Aug. 4, 2017) (quoting 29 C.F.R. § 1630)).

Plaintiff further has made a sufficient showing of disability under the NYSHRL and NYCHRL given that "[a] qualifying disability is defined more broadly under the NYSHRL and the NYCHRL than it is under . . . the ADA." *Karupaiyan v. CVS Health Corp.*, 2021 WL 4341132, at *17 (S.D.N.Y. Sept. 23, 2021) (comparing NYCHRL § 8-102 with 42 U.S.C. § 12102); *see Buron v. Metro Transp. Auth.*, 244 F. Supp. 2d 252, 258 (S.D.N.Y. 2003) ("[I]t is well-settled that the NYSHRL definition of disability is broader than the federal definition.").

## II.    Plaintiff Has Adequately Alleged that She Is a Qualified Individual.

Defendant argues next that the complaint must be dismissed for failure to state a claim because Plaintiff has not plausibly alleged that she is a "qualified individual" under the ADA, NYSHRL, or NYCHRL. Under those statutes, "it is unlawful to discriminate 'against a qualified

individual on the basis of disability.'" *Heiden v. N.Y.C. Health & Hosps. Corp.*, 2023 WL 171888, at \*15 (S.D.N.Y. Jan. 11, 2023) (quoting 42 U.S.C. § 12112(a)).  A "qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  EEOC regulations define "essential functions" as the "'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir.1997) (citing 29 C.F.R. § 1630.2(n)(1)).  "In approaching this inquiry, 'a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.'" *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998)).  Under the NYSHRL, a "qualified individual" is "interpreted coextensively" with the ADA.  *Williams v. MTA Bus Co.*, 44 F.4th 115, 124 (2d Cir. 2022). "[U]nder the NYCHRL, like the ADA, a plaintiff bringing a disability discrimination claim in the employment context must be able to perform the essential functions of the job with or without accommodations." *Id.* at 137.  "However, . . . the NYCHRL directs that the plaintiff's qualification for the position is not an element of a prima facie case, but rather may be disproven by the employer as an affirmative defense." *Id.*

As set out in the background section, H+H was subject to the New York State Mandate, Section 2.61, which applies "not to all employees, but only those covered by the Rule's definition of 'personnel': those employees, staff members, and volunteers 'who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.'" *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274 (2d Cir. 2021) (quoting 10 N.Y.C.R.R. § 2.61(a)(2)).  The mandate "exempts

14

from the vaccination requirement 'personnel' for whom 'immunization with COVID-19 vaccine is detrimental to their health based on a pre-existing condition' as more specifically defined and limited by the Rule." *Id.* (quoting 10 N.Y.C.R.R. § 2.61(d)(1)). As the Second Circuit explained in *We the Patriots USA*:

> The medical exemption here does not "'invite' the government to decide which reasons for not complying with the policy are worthy of solicitude." *Fulton v. City of Philadelphia*, 539 U.S. 522, 537 (2021) (quoting *Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 884 (1990)). Instead, the Rule provides for an objectively defined category of people to whom the vaccine requirement does not apply: employees who present a certification from a physician or certified nurse practitioner attesting that they have a pre-existing health condition that renders the vaccination detrimental to their health, in accordance with generally accepted medical standards, such as those published by ACIP, for the period during which the vaccination remains detrimental to their health. *See* 10 N.Y.C.R.R. § 2.61(d)(1). A written description of the nature and duration of the condition must be furnished, and the exemption must be documented.

*Id.* at 289. The parties agree that anemia is not a contraindication of the COVID-19 vaccine. *See id.* at 289 n.28 (listing contraindications from the "generally accepted medical standards published by ACIP").

Plaintiff's allegations survive a motion to dismiss only if she has plausibly alleged that she was "qualified to perform the essential functions of her job with or without reasonable accommodation." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). H+H's argument is that she has not done so because pursuant to the vaccine mandate, she fell within the ambit of "personnel" that needed to be vaccinated to perform their jobs, and she did not get vaccinated or otherwise fall into an exempt category. In support of its argument, Defendant attached the posted job description for an "Assistant Director of Fiscal Affairs,"[1] which states

---

[1] Plaintiff in her complaint alleges that she was an "Assistant Director of Cost Accounting," but this appears to be a distinction without a difference, as she argues in her opposition to the motion to dismiss that the Court should not consider that job description, not that it is a misstatement of her position. Dkt. No. 52 at 16.

that someone serving in that role "directs and coordinates programs relating to Fiscal Affairs in such areas as accounts payable, hospital management and cost reporting systems, payroll, special accounting, internal and external financial reports, data control, affiliation accounting, asset control, cash receipts, cash disbursements, daily investment of idle cash funds, general accounting and capital accounting." Dkt. No. 46-1 at 2. The job description states also that someone in that role "[c]oordinates the efforts of staff members in initiating and completing work assignments." *Id.* It also lists some "examples of typical tasks," which include reviewing plans, monitoring document flow, initiating operating procedures and new accounting systems, reviewing operations procedures, providing general supervision, engaging in the development and maintenance of staff personnel, and preparing special studies. *Id.*

Defendant argues that per that job description, Plaintiff clearly qualifies as "personnel" as that term is defined in the vaccine mandate—that is, one who "engage[s] in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61(a)(2). However, Plaintiff alleges to the contrary that in her role, she "was not patient-facing and prior to the outbreak of COVID-19 in America . . . she worked, at all times relevant, in an office located at 50 Walter Street, New York," i.e., not in a hospital. SAC ¶ 31. She describes her tasks as primarily to "review financial numbers and provide recommendations on how to best manage department budgets." *Id.* ¶ 32. She worked fully remote starting in mid-March 2020. *Id.* ¶ 36. Working remotely, she was nevertheless "fully able to continue performing her job . . . without issue." *Id.* ¶ 47. Plaintiff also incorporates in her complaint communications with the hospital in which she states that "I can do my job remotely without any impact or covid risk to any of HHC's employees and/or patients," wo which H+H did not respond. *Id.* ¶ 54.

16

It is plausible, reading the complaint and drawing inferences in favor of the Plaintiff, that she did not qualify as personnel to which the vaccine mandate applied.  First, even accepting at the motion to dismiss stage the job description offered by Defendant, which is beyond the four corners of the complaint, it is not clear that any in-person work was required.  It is plausible that tasks like coordination and monitoring fiscal affairs could be conducted remotely.  Second, although true that Plaintiff's employer determined she was covered personnel and the Court generally defers to the employer's judgment about "what functions are essential for service in a particular position," *Shannon*, 332 F.3d 95 at 100, it is not required to accept that judgment in all circumstances or in the face of pleadings to the contrary.  "[A]n employer's written job description is only one of the many factors we consider when evaluating whether a job function is essential and 'no one . . . factor will be dispositive." *Clark v. Coca-Cola Beverages Ne., Inc.*, 2022 WL 92060, at \*3 (2d Cir. Jan. 10, 2022) (summary order) (quoting *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997)).  Instead, that determination requires "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice," including examination of "the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (quoting *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)).

For purposes of the motion to dismiss, Plaintiff has plausibly alleged that her work did not expose others to COVID-19 risk.  At this stage, the complaint "need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but it must assert at a minimum "nonconclusory factual matter" sufficient to "nudge" the claim

"across the line from conceivable to plausible." *Port Auth. of N.Y. & N.J.*, 768 F.3d at 254 (internal citation and quotation marks omitted).  Discovery may ultimately prove that Plaintiff's position did require the kind of in-person elements that prove she is not a qualified individual under the ADA, but to accept wholesale an employer's description of a position at the motion to dismiss stage would transfer from the courts to a defendant the critical task of applying the law to well-pleaded factual allegations.

Defendant cites to several cases in which courts have accepted that a hospital employee was covered as "personnel" under the vaccine mandate even though they did not work with patients directly.  Those cases are distinguishable on their facts.  In *Bobadilla v. New York City Health and Hospitals Corp.*, for example, the plaintiff alleged that she was employed in a "non-clinical capacity," but the court affirmatively determined that because the plaintiff was "responsible for conducting interviews" as an "Associate Confidential Investigator," she could "not perform all of her duties remotely and without contact with other staff."  2024 WL 2055463, at *4 (S.D.N.Y. May 8, 2024).  In *Corrales v. Montefiore Medical Center*, the plaintiff sought only a "blanket exemption" from vaccination while nevertheless continuing her "regular employment" in an office with other persons—that is, she "sought an exemption in which she would continue to be covered as 'personnel' within the meaning of Section 2.61 after her exemption was granted."  2023 WL 2711415, at *7 (S.D.N.Y. Mar. 30, 2023).  In *Algarin v. NYC Health and Hospital Corp.*, the plaintiff also sought a blanket exemption from the vaccination mandate, but did not suggest that his work could otherwise be performed remotely. 678 F. Supp. 3d 497, 509 (S.D.N.Y. 2023).  Similarly, in *Brown v. South Shore University Hospital*, the court was clear that the complaint did not allege "that [plaintiff's] employment responsibilities could be performed remotely."  762 F. Supp. 3d 191, 213 (E.D.N.Y. 2025); *see*

18

*also Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, 2024 WL 168282, at \*8 (S.D.N.Y. Jan. 12, 2024) ("[I]n light of plaintiff's role as a patient-facing nurse, the court cannot conceive of an accommodation that would neither have violated Section 2.61 nor resulted in an undue burden to Defendant."); *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, 2023 WL 3628151, at \*5 (S.D.N.Y. May 5, 2023) ("[I]t is inescapable, in the court's view, that, given plaintiff's role as a staff nurse for the Critical Case–Coronary Care unit, any accommodation that would entirely remove her from the hospital, and from all in-person interaction with patients and staff, would result in at least a *de minimus* burden on the Defendant."); *Robinson v. Children's Hosp. Bos.*, 2016 WL 1337255, at \*2 (D. Mass. Apr. 5, 2016) (Plaintiff "was typically one of the first hospital employees to interact with patients and their family members when they arrived in the emergency department.").  It is not disputed that Plaintiff previously worked in-person for H+H, but she has plausibly alleged that her role did not require her to do so while temporarily awaiting clearance to receive the COVID-19 vaccine.

### III.    Plaintiff Has Adequately Alleged that her Requested Accommodation Would Not Constitute Undue Hardship.

The Second Circuit has recently reiterated that "[t]he ADA . . .  require[s] covered employers to, inter alia, make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is . . .  an employee,' unless the employer 'can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business.'"  *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 148 (2d Cir. 2024) (quoting 42 U.S.C. § 12112(b)(5)(A)); *see* 29 U.S.C. § 794(d); 45 C.F.R. § 84.12.  "The term 'reasonable accommodation' may include . . . job restructuring . . . [and] reassignment to a vacant position . . . ."  42 U.S.C. § 12111(9)(B).  "Unless the employer can demonstrate that an accommodation would impose on its operations undue hardship, the denial of a reasonable

accommodation constitutes prohibited discrimination." *Porter*, 92 F.4th at 148.  An "undue hardship" is "an action requiring significant difficulty or expense."  42 U.S.C. § 12111(10)(A)).  The existence of an undue hardship is an affirmative defense, but it may be asserted "in a pre-answer motion to dismiss when the facts establishing it are clear."  *Lowman v. NVI LLV*, 821 F. App'x 29, 31 (2d Cir. 2020) (summary order).

Defendant here argues that Plaintiff's accommodation request would constitute an undue hardship because granting her requested accommodation "would have required H+H to violate New York State Law, specifically Section 2.61."  Dkt. No. 47 at 18.  Several courts have determined that granting an accommodation that would violate the law constitutes an undue hardship such that refusing such an accommodation is not in violation of the ADA.  *See, e.g., Algarin*, 678 F. Supp. 3d at 509–10 (collecting cases). However, as the Court has already discussed, Plaintiff has plausibly alleged that she is not included within the ambit of "personnel" as that term is defined in Section 2.61.  Even if she did qualify as personnel, however, in *We the Patriots USA v. Hochul* (a companion case to the earlier cited opinion), the Second Circuit clarified that "it may be possible under the Rule for an employer to accommodate—not exempt—employees with religious objections, by employing them in a manner that removes them from the Rule's definition of 'personnel.'"  17 F.4th 368, 370 (2d Cir. 2021).  "Such an accommodation would have the effect under the Rule of permitting such employees to remain unvaccinated while employed."  *Id.*  The same reasoning would apply under the ADA.  That is, it would be reasonable (and not an undue hardship) for H+H to temporarily accommodate Plaintiff by permitting her to work in a manner that did not involve her potentially exposing others to COVID-19, even if it had legitimately determined that her current role would inescapably involve such exposure in the long-term.

Defendant responds that Plaintiff has failed to plausibly allege that there is any accommodation that could result in her ability to complete all the tasks required of her position. First, it is not true, as Defendant asserts, that Plaintiff has not alleged what her job entailed; she states that her "primary tasks and responsibilities were to review financial numbers and provide recommendations on how to best manage department budgets within Defendant NYC HHC." SAC ¶ 32.  She was "fully able to continue performing her job remotely as she had done successfully, and without issue, since March 2020."  *Id.* ¶ 47.  She alleges specifically that she was told by her supervisor that because she was not a patient-facing employee, there was no need for her to get vaccinated.  *Id.* ¶ 41.  Defendant also misunderstands Plaintiff's minimal burden at this stage in the analysis.  Given her allegations that she was not patient-facing, and that she was able to perform her job without issue remotely for over a year after the onset of the pandemic, it is at least plausible that she could complete her job remotely, especially for the "temporary" amount of time for which she requested accommodation.  *Id.* ¶ 58.  Defendant has not identified what "essential function" of her job she would be unable to accomplish while temporarily working from home, or how such an accommodation would "involve the elimination" of such an essential task considering that, accepting her allegations as true, she was able to conduct her work entirely remotely.  *See Stevens v. Rite Aid Corp.*, 851 F.3d 224, 230 (2d Cir. 2017).[2]

Defendant points to several cases in which courts have determined that no remote work accommodation was available, but they are distinguishable from the allegations at issue here.  In *Stanley v. City University of New York*, the plaintiff alleged that he had "satisfactorily performed all his essential duties remotely and without issue for at least 14 months," but "did not address

---

[2] Defendant's suggestion that allowing Plaintiff to work in-person, unvaccinated, would present an undue hardship to H+H is not at issue.  That is not an accommodation that she requested, or that the hospital offered.

whether CUNY's needs and [plaintiff's] responsibilities after the initial phase of the pandemic, when he had worked remotely, tracked those thereafter." 2023 WL 2714181, at *20 (S.D.N.Y. Mar. 30, 2023). But there, given that plaintiff's role as a "maintenance and labor supervisor," the court held that "more is needed to make plausible the allegation that [plaintiff] could have performed all his essential duties from home." *Id.* He did not allege any reason for the court to question his own employer's assessment that the essential functions of his position could not be performed remotely. *Id.* Not so here. Plaintiff's job description and her own explanation of what it entailed leads to the plausible inference that a temporary continuation of remote work would not have presented an undue hardship to Defendant. Ultimately, discovery may show that to be inaccurate—but that is a question for summary judgment, or for trial. *See, e.g.*, *Frantti v. New York*, 850 F. App'x 17, 20 (2d Cir. 2021) (summary order) (discussing the evidence adduced as to a plaintiff's essential job functions at the summary judgment stage). Similarly, unlike the plaintiff in *Cangro v. New York City Department of Finance*, Plaintiff here has alleged "how [her] requested accommodation to work from [her] preferred locations would allow [her] to perform [her] essential job functions." 2024 WL 3833971, at *6 (S.D.N.Y. Aug. 14, 2024). The more apt comparison is *Coleman v. New York City Dep't of Health and Mental Hygiene*, in which the court found that where the plaintiff "plead[ed] that he could perform the essential functions of the job while working from home," he sufficiently stated a claim to survive a motion to dismiss. 2022 WL 704304, at *4 (S.D.N.Y. Mar. 9, 2022).[3]

---

[3] It is beside the point that "courts have repeatedly held that temporary modifications due to the global pandemic do not change a job's essential functions," *Thompson v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 922820, at *2 (S.D.N.Y. Mar. 4, 2024), because Plaintiff has alleged that she was able to continue every element of her job in a remote capacity.

**IV.    Plaintiff Did Not Thwart the Interactive Process.**

In her Second Amended Complaint, Plaintiff does not include a cause of action alleging that Defendant violated either the NYSHRL or the NYCHRL by failing to engage in an interactive process with her regarding the accommodation she sought from the vaccine mandate. However, in its motion to dismiss, Defendant states that because Plaintiff herself thwarted the interactive process, her failure to accommodate claim must be denied.  It is true that "a defendant is not liable for failure to provide a reasonable accommodation . . . if the plaintiff does not ask for an accommodation, or fails to provide information to assess the request for an accommodation." *Voss v. McDonough*, 2021 WL 4199941, at *12 (S.D.N.Y. Sept. 15, 2021) (quoting *Khalil v. Pratt Inst.*, 2019 WL 1052195, at *7 (E.D.N.Y. Feb. 13, 2019)).  Additionally, "[a]n employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate." *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 956 (2d Cir. 2008) (summary order).  This kind of defense against a cause of action can be considered on a motion to dismiss only if it "appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  And the Court remains "under an obligation to accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 2019 WL 3940218, at *3 (S.D.N.Y. July 29, 2019).

Defendant argues that Plaintiff was responsible for a breakdown in the interactive process because she failed to submit additional medical documentation other than the letter from her doctor when the Defendant had "determined that the information provided did not establish that immunization with the COVID-19 vaccine is detrimental to her health." Dkt. No. 46-3.  From the face of the complaint, however, it is H+H, not Plaintiff, that declined to engage in a "good faith interactive process that assesses the needs of the disabled individual and the reasonableness

of the accommodation requested." *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 420

(S.D.N.Y. 2014) (quoting *Philips v. City of New York*, 884 N.Y.S.2d 369, 373 (1st Dep't 2009)).

Plaintiff initiated communication with H+H regarding her requested accommodation on

November 16, 2021, attaching a note from her doctor stating his opinion that she hold off on

vaccination at that moment due to the interaction of her "underlying hematologic condition" and

her recent COVID-19 exposure.  SAC ¶ 45.  Defendant denied that request via email.  *Id.* ¶ 48.

Defendant followed up the next day by suspending her employment without pay.  *Id.* ¶ 49.

When Plaintiff asked if she could appeal that decision and explained that she had an upcoming

appointment with a hematologist, Defendant responded only that "our records indicate that you

have not complied with the NYS Mandate COVID-19 Vaccination, Second Dose.  If you do not

become fully vaccinated, you will be separated from NYC Health +Hospitals on Monday,

November 29, 2021."  *Id.* ¶ 52.  Plaintiff responded, again noting that "your medical team never

consulted my doctor," and that she did not "understand why I am unable to continue this

accommodation until I can be cleared medically."  *Id.* ¶ 54.  The response from H+H was only

that her medical condition was not a contraindication of the vaccine.  *Id.* ¶ 55.  Plaintiff then

explained that even if she wanted to comply, she would not be able to receive both rounds of the

vaccine by November 29, 2021, due to the amount of time required between doses.  *Id.* ¶ 56.

Defendant responded only by stating that she was required to submit proof of vaccination by the

posted deadline.  *Id.* ¶ 57.

On November 29, 2021—the day that H+H informed Plaintiff she would be terminated if

she did not comply with the vaccine mandate—she emailed again clarifying that she was "not

refusing vaccination," but rather "requesting reasonable accommodation until I am medically

cleared to vaccinate."  *Id.* ¶ 58.  In response, H+H stated that she did not supply medical

24

documentation supporting an exemption, and so she would be terminated. On November 30, Plaintiff was cleared by her doctor to get the vaccine, and emailed this letter to the relevant parties at H+H. *Id.* ¶¶ 62–63. Defendant emailed Plaintiff on December 1, 2021, informing her that she was terminated. *Id.* ¶ 67. She received the first dose of the COVID-19 vaccine three days later. *Id.* ¶ 68. At no point in this back and forth did H+H engage, even tangentially, with Plaintiff's stated reason for requesting an accommodation. Nor did it acknowledge the fact that she was not seeking an exemption from the vaccine mandate, but rather a temporary extension to deal with what her doctor had informed her was a potential complication of receiving the vaccine at that time. It was nonresponsive for H+H to explain that anemia was not a contraindication of the vaccine or a valid reason for an exemption, because that was not Plaintiff's request.

Thus, although Defendant determined Plaintiff's medical documentation was insufficient for an exemption, the evidence is to the contrary; Plaintiff did provide documentation regarding her requested accommodation, which Defendant did not consider. The "exclusion of Plaintiff's medical condition from its list of contraindications does not definitively establish that Plaintiff's request for accommodation was frivolous as a matter of law," especially considering her doctor's opinion to the contrary. *Carnett*, 2026 WL 35348, at *5. It is not plain from the face of the complaint that Plaintiff impeded the interactive process such that she has not stated a failure-to-accommodate claim.

## V.      Plaintiff Has Adequately Alleged Causation.

Finally, Defendant argues that Plaintiff's action must be dismissed because she was not discriminated against based on her disability; in other words, that she has not "establish[ed] a nexus between her qualifying disability and her request for an accommodation." *Abramov v. Northwell Health Sys.*, 2024 WL 4276171, at *11 (E.D.N.Y. Sept. 24, 2024) (quoting *Mirinaviciene v. Keuka Coll.*, 2023 WL 8281897, at *3 (W.D.N.Y. Nov. 30, 2023)). The

relevant portion of the ADA states that the term "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A); *see Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001).  "[A]n employer discriminates against an employee with a disability only by failing to provide a reasonable accommodation for the 'disability' which is the impairment of the major life activity."  *Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102, 105 (2d Cir. 2003).

Defendant argues that Plaintiff was required to allege that she was subject to "derogatory comments or allegations identifying similarly situated individuals who were purportedly treated better than Plaintiff."  Dkt. No. 54 at 11.  That is not required for a reasonable accommodation claim; it is required only for "employment discrimination cases that do not turn on the employer's provision of a reasonable accommodation."  *Carnett*, 2026 WL 35348, at *6 (quoting *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 107 (2d Cir. 2001)).  "With respect to a reasonable accommodation claim, 'the relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled.'"  *Lenti v. Connecticut*, 2020 WL 4275600, at *8 (D. Conn. July 24, 2020) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003)).

Plaintiff here alleges discrimination on the basis that she was denied a reasonable accommodation.  She is not, as Defendant seems to imply, required to allege either disparate treatment or disparate impact to state a claim.  *See Garcia v. Lewis Tree Serv., Inc.*, 2022 WL

717861, at *8 (W.D.N.Y. Mar. 10, 2022) ("[D]rawing all inferences in plaintiff's favor, [defendant] denied plaintiff's request for medical leave until his chemotherapy was completed. That is sufficient to satisfy plaintiff's pleading burden."); *Dossous v. N.Y.C. Health & Hosps.*, 2020 WL 5752175, at *2–3 (E.D.N.Y. Sept. 25, 2020) (discrimination based on termination survived Rule 12(b)(6) dismissal where plaintiff alleged that "[d]efendant engaged in an adverse employment action when it terminated him" and that "he was terminated as a result of his back injury, and that [d]efendant refused to provide any accommodation").[4]

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 45.


SO ORDERED.

Dated: February 9, 2026
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[4] To the extent Plaintiff did intend to press a discrimination claim under the ADA apart from her failure to accommodate claim, she has not alleged any facts that would lead to the plausible inference that she was subject to disparate treatment or impact. Rather, per Plaintiff's own allegations, she was terminated for her failure to comply with the company-wide vaccine mandate, rather than any express or implicit animus against persons with anemia. *See Carnett*, 2026 WL 35348, at *6 (denying a discrimination claim where the plaintiff "does not allege that the vaccination mandate was unequally enforced against disabled employees," and "does not otherwise allege facts suggesting that it was her disability, rather than her non-compliance with Defendants' vaccination requirement, that led to her termination").